SWEENY et al. v. KELLOGG.

(Supreme Court, Appellate Division, First Department. January 8, 1904.)

1. CONTRACTS—SETTLEMENT—INTENTION OF PARTIES—EVIDENCE—CONSTRUCTION.

A partnership and one A. were interested in a judgment, but the amounts of the separate interests were not stated by the referee. The partnership had assigned $4,200 of its interest in the recovery to A., and the remainder of its interest to plaintiff. A meeting was had between plaintiff and A. to determine on the distribution. The attorney for A. claimed that the partnership should receive $8,800. Subsequently plaintiff's attorney wrote the attorney for A. that plaintiff would accept $13,000, and thereafter A.'s attorney stated to plaintiff's attorney that he would agree to a settlement for $13,000, provided plaintiff would pay therefrom certain fees, amounting to $1,500, and such offer plaintiff testified he accepted. Thereafter A.'s attorney wrote the attorney for plaintiff that it would be necessary for him to procure papers releasing the claim of plaintiff on the payment of $11,500. *Held*, that it was evident from the testimony that the agreement related to the amount of recovery which should be received by plaintiff, and not the amount to which the partnership was entitled, subject to a deduction of the $4,200.

Van Brunt, P. J., dissenting.

Appeal from Special Term, New York County.

Action by Mary Sweeny and others, as administrators of the estate of Denis Sweeny, deceased, against L. Laflin Kellogg. From a judgment in favor of defendant, plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

William F. Kimber, for appellants.

Abram J. Rose, for respondent.

PATTERSON, J. This judgment must be reversed. It appears that the firm D. Sweeny's Sons brought suit against the city of New York for $106,080. Kellogg & Rose (of which firm the defendant was a member) were the plaintiffs' attorneys. The claim was composed of two items, one for $23,427, for work done by D. Sweeny's Sons, and the other for $82,653, for work claimed to have been done by J. W. Cody & Co. While the suit was pending, the firm of Cody & Co. assigned its entire interest therein to one Adams, and Sweeny's Sons assigned to him an interest in the amount claimed, to the extent of $4,200. Thereafter Sweeny's Sons assigned to the plaintiffs' intestate their entire remaining interest in the action. After these assignments were made Sweeny's Sons recovered a judgment against the city on both claims for $92,549.62. The respective interests of Sweeny's Sons and of Cody & Co. in the amount recovered were not separately stated by the referee, and negotiations were had between Mr. Swift, the attorney for the plaintiffs' intestate, and Mr. Kellogg, acting for Adams, to determine how much their clients should respectively receive of the amount recovered. It was ultimately agreed that the plaintiffs' intestate should receive $13,000, less $1,500, which was to be paid to Kellogg for his services as attorney in the action against the city. After that agreement was made the amount of the judgment was reduced to $85,938.60, but the agreement as to the distribution remained. Thereafter a claim was made to a part of the share of the plaintiffs' intestate, and it was agreed to leave $2,500 of the $13,000 on deposit with the comptroller of the city of New York, and thus the plaintiffs' intestate's claimed share was reduced to $9,000. An arrangement was then made by which Kellogg was to receive all the money from the comptroller, and he did receive the $83,438.60. Thereafter Kellogg refused to pay $9,000 to the plaintiffs' intestate, and insisted that he was entitled to retain out of that sum $4,200, with interest, being the amount (represented by two promissory notes) of D. Sweeny's Sons' assignment to Adams. An arrangement was made by which Mr. Kellogg kept possession of the amount he claimed was due Adams, and he paid over the balance of the $9,000, viz., $4,516.25, to the plaintiffs' intestate, the parties agreeing that the rights of the plaintiffs' intestate and of Adams to the sum retained should be determined by the court. The issue is as to the agreement between the parties, the plaintiffs claiming to be entitled to $9,000, and the defendant insisting upon Adams' right to deduct the $4,200 and interest from the $9,000. The court below held with the defendant, and dismissed the complaint.

In the state of the proof that ruling was erroneous. The correspondence and the whole evidence show, so far as the case was developed, that what was in contemplation between Swift, the attorney for the plaintiffs' intestate, and Kellogg, the attorney for Adams, was simply the ascertainment of the distributive amounts to which those two persons would be entitled out of the proceeds of the judgment. Mr. Swift testifies that on the 4th of March, 1901, he, the members

of the firm of Sweeny's Sons, and Kellogg and Adams, met in Mr. Kellogg's office for the purpose of distributing the fund; that at that time Sweeny's Sons claimed they ought to get $20,000, and Adams the remainder. Kellogg, as attorney for Adams, disputed that, and claimed that the copartnership should only get $8,800. That was before the money was paid over by the comptroller. On the 5th of March, 1901, Swift wrote Kellogg, on behalf of the plaintiffs' intestate, a letter as follows:

"March 5th, 1901.

"My dear Mr. Kellogg:—I have heard from Mr. Denis Sweeny, Sr., since our meeting yesterday and he wishes me to inform you that he will agree to accept $13,000.00 out of the recovery from the judgment, provided his offer is accepted at once, and I am to notify him by to-morrow morning whether or not it is accepted. He says that he will not entertain any counter offer.

"Yours very truly, ·　　　　　　　　　　　　　　　Frederic J. Swift.

"I send this to you as Mr. Adams seems to have left the division in your hands without knowing what he really is entitled to."

On March 8, 1901, Kellogg wrote Swift as follows: "Mr. A. J. Adams, Sr., declines to diminish his claim in any respect." The matter thus stood until the 18th of April, when Mr. Kellogg talked with Swift over the telephone, and proposed that he admit that $8,800 was due the copartnership of Sweeny's Sons, and it was stated that Swift wanted $13,000, and that out of that he (Kellogg) ought to get $1,500 in fees, which would reduce the amount to $11,500, and then Kellogg said: "If you will split the difference between the $11,500 and the $8,800, making $10,150, I will get Mr. Adams to take that." Swift swears that he rejected that, and stood on the original offer, and that it so remained until the 3d of May, 1901, when Kellogg called up Swift again on the telephone, and proposed to settle for the sum of $13,000, provided the plaintiffs' intestate would pay him out of the $13,000 the sum of $1,500 for his services, leaving $11,500 net for Mr. Sweeny. Swift then says that that was accepted on the same day. In June, 1901, Kellogg wrote to Swift, among other things:

"It will be necessary for you to procure papers releasing the claim of the elder Sweeny upon the payment of $11,500, and also of the claim of the judgment against Sweeny, which is a lien on the fund. By leaving and trusting them with me, the settlement will be carried out, and I can draw the money whether you are in town or not. Of course I will account to you."

It is apparent from this testimony of Swift that what was in negotiation between Kellogg and himself was the subject only of how much of the fund to be distributed the plaintiffs' intestate was actually to receive, and how much Adams was to receive. Swift's testimony is distinctly that the net amount to be received by the plaintiffs' intestate was fixed at $11,500. Both of the attorneys negotiating knew of the claims and of the assignments. Kellogg knew fully what had been assigned to Adams. The whole matter turns upon the agreement and understanding between the two attorneys as to the actual amount each party was to receive. Swift swore it was to be a net sum for his client, and there is nothing in the correspondence between Swift and Kellogg which contradicts that statement. If such were the fact, the plaintiffs were entitled to recover, and the court erred in dismissing

the complaint.  If such were not the fact, Kellogg was called upon
to refute this evidence.

The judgment must be reversed, and a new trial ordered, with costs
to appellants to abide the event.  All concur, except VAN BRUNT,
P. J., who dissents.